MARKS *v.* FOX.

*(Circuit Court, S. D. New York. October Term, 1883.)*

1. EXCEPTIONS TO EVIDENCE.

Exceptions to the admission or exclusion of evidence taken before a master need not be restated when the exceptions to his report are filed. They can be considered upon the record on the argument of the motion to confirm his report.

2. RES GESTÆ.

Declarations made by an employer to a workman at the time work is given to the latter, as to the person for whom the work is to be done, are part of the *res gestæ*, and admissible in evidence. The marks or tags upon the parcels of work so given are also part of the *res gestæ*. Parol evidence is admissible as to these marks, for the purpose of identification.

3. CONTRADICTORY STATEMENTS.

Contradictory statements alleged to have been made by a witness are not admissible, unless his attention has been previously called to them.

4. IMPEACHMENT OF WITNESS.

Evidence that a witness is acquainted with the character of another is not sufficient to authorize him to state that he would not believe such a witness under oath. It is necessary that he should say that he knew the character of the witness for truth and veracity.

Exceptions to Master's Report.

This cause came before the court on exceptions filed by the defendants to the master's report. The action was brought to restrain the defendants from the alleged infringement of the plaintiff's patent. An interlocutory decree was rendered in favor of the plaintiff, and it was referred to the master to ascertain and take an account of the profits which the defendants had made and of the damages which the plaintiff had sustained by reason of the infringement. During the hearing before the master, it became material to show how many caps had been made for the defendants by one Isaac Pachner, and by the firm of Pachner & Adams. The defendants called several witnesses, who had been in the employ of Pachner & Adams, who testified that, in the ordinary course of business, the material of caps which that firm

made was brought to them by the several houses with whom they dealt, ready to be made up; and that thereupon it was given out by Pachner to his workman to be bound, stitched, trimmed, and made into completed caps. These were then put into pasteboard boxes and returned to the houses furnishing the material. Each witness further testified that the material furnished by each house was kept separate during the process of manufacture, and that when the materials for a particular lot of caps were given out to each workman, Pachner stated to him for whom that particular lot was to be made; and some of the witnesses further testified that the different lots of material had marks upon them indicating for whom such lots were to be made, respectively. The witnesses' names were Henry King and Aaron Grant. The master's rulings upon the questions put to them will sufficiently appear from the following specimens:

(47) *Question.* What were the names of the firms stated to you by your boss in the directions which you have testified were given you in respect to the firms for whom the different lots of caps were being made? (Objected to as immaterial and incompetent; objection sustained; exception.) (48) *Q.* In the course of the directions thus given you, as you have stated, did your boss point out to you any of the caps as being made for Charles Fox's Son & Co.? *Answer.* Oh, yes; he used to point out a lot as belonging to Fox and say, "Take these and work them." (49) *Q.* How many slide-band caps did Pachner & Adams make for Charles Fox's Son & Co. during 1879? (Objected to, as no competency has been shown, and as hearsay; objection sustained; exception.) (50) *Q.* How many of the slide-band caps on which you worked in 1879 was for Charles Fox's Son & Co.? (Objected to as hearsay; objection sustained; exception.)

Certain affidavits that had been read on a motion to punish for contempt, were, by consent, received in evidence as depositions. These affidavits stated the number of caps that were made by Pachner for the defendants, and showed that the means of knowledge on this subject of the affiants was the statement so made to them respectively by Pachner, at the time the work was given to them, and the marks upon the different lots. The plaintiff's counsel objected to this evidence, on the ground that it was hearsay and incompetent. It was excluded by the master and defendants excepted.

In reply to other portions of the defendants' testimony, the plaintiff put in evidence an affidavit of Samuel Adams, which, by consent, was received as a deposition, which contained a statement as to what Alice Wronke, the wife of W. Wronke, and Wronke himself, had said to the affiant as to the circumstances under which Wronke's affidavit was obtained, and the same affidavit contained the following statement: "I know Alice Wronke and Theresa Gumbert; they worked for us, and their character is bad; I would not believe either of them under oath." These portions of the affidavit of Adams were objected to by the defendants, but were received by the master under the defendants' exceptions. When the testimony was all in, and the case argued before the master, he made a draught report, of which he served a copy on the solicit-

ors, who filed objections to the same. He then filed his report after receiving such objections, and the defendants filed exceptions to the report, but did not in the exceptions so filed restate the exceptions taken before the master, relying upon such exceptions as they appeared on the record. On the argument before the court, the plaintiff claimed that these exceptions could not be considered by the court because they were not restated in the formal exceptions as filed.

*Everett P. Wheeler,* for defendants.

1. The exceptions are regularly taken and are before the court. *Troy Fact.* v. *Corning,* 6 Blatchf. 328; *Tyler* v. *Simmons,* 6 Paige, 127; *Livermore* v. *Bainbridge,* 14 Abb. Pr. (N. S.) 227, affirming S. C. 44 How. Pr. 357; Equity Rule, 90; *Fischer* v. *Hayes,* 16 Fed. Rep. 469.

2. The declarations made by "the boss" at the time he distributed the work and supplied the material were part of the *res gestæ.* The thing done was material to be shown. The declarations were contemporaneous with the main fact under consideration, and "were so connected with it as to illustrate its character." 1 Greenl. Ev. § 108; *Beaver* v. *Taylor,* 1 Wall. 637; *Ins. Co.* v. *Mosley,* 8 Wall. 397.

3. The material fact to be proved being the number of sliding-band caps made by Pachner & Adams for the defendants, the circumstances and declarations offered in evidence were contemporaneous with the manufacture and with the separation, and are so connected with it as to illustrate its character, to-wit, separation for the defendants instead of for some one else. 1 Greenl. Ev. § 108.

In *Pool* v. *Bridges,* 4 Pick. 378, the court say:

" If he was then employed in any act respecting the goods, such as separating different parcels for the purpose of distinguishing what belonged to one person and what to another, what he said while he was doing it would be considered as a part of the transaction and admissible in evidence. It would be like his labeling the goods with the name of the owner, which though in one sense a declaration, yet would be construed an act indicative of proprietorship in the goods."

4. So far as relates to statements by Wronke tending to impair his credibility, his attention should have been called to them, otherwise they are inadmissible. 1 Greenl. Ev. § 462.

5. The witness does not say that he knew the character of Mrs. Wronke and Mrs. Gumbert for truth and veracity. This is essential to sustain a general impeachment. Id. § 461.

*C. Wyllis Betts,* for plaintiffs.

Exceptions to a master's report upon rulings accepting or rejecting evidence, can be taken, if at all, only when objections of the same kind have been made to the draft report. No such exceptions were taken in this case. *Troy Fact.* v. *Corning,* 6 Blatchf. 328; *Schwarz* v. *Sears,* Walk. Ch. 19; *Tyler* v. *Simmons,* 6 Paige, 127; *Ward* v. *Jewett,* Walk. Ch. 45. Errors or irregularities in excluding evidence

can only be reviewed by motion to refer back before filing exceptions. The filing of exceptions waives them. *Tyler* v. *Simmons, supra.*

WALLACE, J.  The master erroneously excluded the declarations of Pachner to his workmen, made while distributing materials to them to be worked into caps, tending to indicate to whom the materials belonged, and for whom the caps were to be made.  They were competent as part of the *res gestæ,* and, like the marks upon the different lots, indicating to whom the lots belonged, fall within the category of verbal facts.  The witnesses should have been permitted to give their estimate of the number of caps made for the defendants, so far as such an estimate could be founded on the personal observation of the witnesses, and upon the knowledge acquired by them from directions and instructions given to them while making the caps for the various customers of their employer.

The master erroneously sustained the objections to interrogatories 20, 28, 34, 38, 47, 49, 50, 51, and 52, propounded to the witness Henry King, and to interrogatories 17, 21, 44, 46, 65, 68, 72, 75, 76, and 81, propounded to Aaron Grant.  While some of these interrogatories do not seem to have been of much importance, others were, and the general result of the master's rulings has been to deprive defendants of testimony which was clearly competent and material.  It is for the master to determine what weight should be given to this testimony when it is in the case.  It may be that his conclusions will not be affected by it, but upon this review of his findings it cannot be determined that they were not influenced by the absence of the evidence which the defendants sought to introduce.

The portions of the affidavit of William Wronke, Alice Wronke, and Saill Wolff excluded, should also have been received, and the objections on the part of the defendants to portions of the affidavit of Samuel Adams relating to the statements of Alice Wronke, and as to the reputation of Wronke and his wife for veracity, should have been sustained.  The case is referred back to the master, with directions to permit the defendants to re-examine the witnesses King and Grant *de novo,* and to receive the portions of the affidavits of Wronke and his wife, and Saill Wolff, which were excluded, and to exclude the portion of the affidavit of Samuel Adams which was admitted, and thereupon to reconsider the proofs and report his conclusions.